Dan Stormer, Esq. [S.B. # 101967]
Brian Olney, Esq. [S.B. #298089]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com
        bolney@hadsellstormer.com

Attorneys for Plaintiffs
GABRIELA KOUTANTOS and BARBARA KAPPOS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELA KOUTANTOS and BARBARA KAPPOS, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF LOS ANGELES; and DOES 1- 10. <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES:** <br><br> 1. 42 U.S.C. § 1983, 4th and 14th Amendments: Unreasonable Seizure <br><br> 2. 42 U.S.C. § 1983, 4th and 14th Amendments: Unreasonable Search <br><br> 3. 42 U.S.C. § 1983, 4th and 14th Amendments: Excessive Force <br><br> 4. 42 U.S.C. § 1983, 4th and 14th Amendments: Failure to Intervene <br><br> 5. Bane Act, Civil Code § 52.1 <br><br> 6. Assault <br><br> 7. Battery By Police Officer <br><br> 8. Intentional Infliction of Emotional Distress <br><br> 9. Negligence <br><br> **[DEMAND FOR JURY TRIAL]** |

## I.   INTRODUCTION

1.      On September 25, 2022, deputies with the Los Angeles County Sheriff's Department (LASD) pulled over Gabriela Koutantos in the erroneous belief that the rented U-Haul truck Ms. Koutantos was driving might be stolen.  The U-Haul van was lawfully rented in Ms. Koutantos's name and she complied with all police orders, never presented any threat, and had committed no crime.  Despite all this, the deputies surrounded Ms. Koutantos, held her at gunpoint, ordered her onto her knees, handcuffed her, and detained her.  Ms. Koutantos's mother, Barbara Kappos, was present and witnessed the incident.

2.      The deputies acted pursuant to LASD's policy of using so-called "high-risk" traffic stops—the same tactics LASD uses to detain individuals wanted for murder and other violent crimes—to detain motorists suspected only of stealing a vehicle, a property crime that is not high risk.  LASD's policy is contrary to the standards and training of the Commission on Police Officer Standards and Training, which sets standards and training for California law enforcement, and is unconstitutional under Ninth Circuit law.

3.      Only after detaining Ms. Koutantos for a significant period of time did the deputies finally tell her that they had pulled her over believing that her vehicle was stolen but confirmed that it was not.  The deputies could have quickly learned the same information by simply asking Mr. Koutantos a few questions and without subjecting her to these terrifying and traumatizing tactics.

## II.   JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  Plaintiffs' state-law claims form part of the same case and controversy and are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the United States District Court of the Central District

of California pursuant to 28 U.S.C. § 1391(b)(1) as the Central District is "a judicial district in which any defendant resides" and "all defendants are residents of the State in which the district is located."  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), as the Central District is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

### III.   PARTIES

6.      Plaintiff Gabriela Koutantos resides in Monrovia, California.  Ms. Koutantos was driving a rented U-Haul 9' cargo van with Arizona license plate No. AL06067 on September 25, 2022, on Atlantic Boulevard near Hubbard Street when LASD deputies pulled her over and conducted a "high-risk" stop in which they drew their weapons, held her at gunpoint, forced her onto her knees in the middle of the street, handcuffed her, searched her person and vehicle, and held her in a lengthy detention in a police car.

7.      Plaintiff Barbara Kappos resides in Arcadia, California.  Ms. Kappos is Ms. Koutantos's mother.  On September 25, 2022, Ms. Kappos was accompanying her daughter in Ms. Kappos's own vehicle while Ms. Koutantos drove the rented U-Haul cargo van to return it to U-Haul.  Ms. Kappos saw LASD deputies pull her daughter over, hold her at gunpoint, force her onto the ground, violently handcuff her, and detain her in a police car.

8.      Defendant County of Los Angeles ("the County") was and is a legal political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by a duly elected County Board of Supervisors and/or their agents and officers.  The County is responsible for the actions, inactions, policies, procedures, practices, and customs of the LASD and its agents and employees. At all relevant times, the County was and continues to be responsible for assuring that the actions of the LASD and its agents and employees comply with the Constitutions of the State of California and of the United States and any other applicable laws and regulations.

COMPLAINT FOR DAMAGES                    -2-

9.      Many LASD deputies were involved in the incident.  Plaintiffs are currently unaware of their identities except for Deputy Santalin,[1] whose specific role in the incident it currently unknown to Plaintiffs.  Defendant Deputy DOES 1-10 are employees of the LASD who were present for and participated in the incident.  Among other things, Defendant Deputy DOES participated in the high-risk stop of Ms. Koutantos and her *de facto* arrest without probable cause, held Ms. Koutantos at gunpoint, ordered her onto her knees in the middle of the street, violently handcuffed her, detained her, searched her person and vehicle without consent, and/or stood guard with the other Deputy Defendants while they committed these acts.

10.     Defendant Deputy DOES 1-10 (collectively the "Deputy Defendants") engaged in the acts or omissions alleged herein under color of state law and within the course and scope of their duties as Officers of the LAPD.  The Deputy Defendants were acting with the complete authority and ratification of their principal, Defendant County of Los Angeles.

11.     Plaintiffs are informed and believe and thereon allege that at all times relevant herein, Defendants and each of them were the agents, employees, servants, joint venturers, partners, and/or co-conspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants was acting within the course and scope of said relationship with Defendants.

12.     All of the acts and omissions complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Plaintiffs allege that to the extent certain acts and omissions were perpetrated by certain Defendants, the remaining Defendant or Defendants confirmed and ratified said acts and omissions.

---

[1] Deputy Santalin did not provide a business card and Plaintiffs are not certain of the correct spelling of his name.

13.     Plaintiffs are informed and believe and thereupon allege, that at all times material herein, each Defendant was dominated and controlled by his/her co-Defendant and each was the alter-ego of the other.

14.     Whenever and wherever reference is made in this complaint to any act or failure to act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly and severally.

### IV.    ADMINSITRATIVE PEREQUISITES

15.     Plaintiffs Gabriela Koutantos and Barbara Kappos exhausted their administrative remedies by filing governmental tort claims with the County of Los Angeles on March 20, 2023.  By correspondence dated June 2, 2023, the County rejected each Plaintiff's governmental tort claim.

### V.    FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

16.     On September 25, 2023, Ms. Koutantos and Ms. Kappos rented a 9-foot U-Haul Cargo Van from U-Haul Moving & Storage of Pasadena at 552 South Raymond Avenue, Pasadena, California 91105, with Arizona license plate AL06067.  Plaintiffs then used the U-Haul to pick up some donations for the East Los Angeles Women's Center, where Ms. Kappos serves as the Executive Director, and deliver them to the Women's Center.

17.     After dropping off the donations at the Women's Center, Plaintiffs began driving back to the U-Haul store to return the van at approximately 2:00 P.M.  Ms. Kappos drove her personal vehicle and Ms. Koutantos followed her in the U-Haul van. Plaintiffs exited the Women's Center parking lot and briefly pulled over on Atlantic Boulevard to wait for a coworker to lock up the front gate.  Ms. Koutantos noticed a public safety vehicle make a U-turn and drive by a few times.

18.     Plaintiffs began driving back to the U-Haul store.  The public safety vehicle appeared to follow them.

19.     As Plaintiffs neared the intersection of Atlantic Boulevard and Hubbard

Street, they heard sirens and saw multiple LASD vehicles with their lights on speeding down Atlantic Boulevard in the opposite direction. The LASD vehicles made U-turns. Ms. Koutantos pulled over to allow the deputies to pass. The deputies deactivated their lights. Ms. Koutantos then resumed driving, at which point the deputies reactivated their lights and pulled Ms. Koutantos over.

20. LASD deputies performed a "high-risk" traffic stop on Ms. Koutantos. They drew their weapons, pointed them at Ms. Koutantos, and ordered her to exit the U-Haul van. The Deputies continued pointing their guns at Mr. Koutantos, ordered her onto her knees in the middle of the street, and violently handcuffed her.

21. Meanwhile, Ms. Kappos had lost sight of her daughter's U-Haul after Ms. Koutantos pulled over to allow the deputies to pass. Ms. Kappos pulled over to the side of the road, looked in her rearview mirror, and saw that Ms. Koutantos's van was pulled over to the side of the road. To her horror, Ms. Kappos then saw her daughter on the ground with deputies pointing their guns at her. Ms. Kappos got out of her car and ran up the street toward her daughter shouting, "What are you doing? That's my daughter!" None of the deputies responded as they continued pointing their weapons at Ms. Koutantos. Ms. Kappos thought the deputies might kill her daughter.

22. The deputies searched Ms. Koutantos, lifted her shirt, lifted and shook her bra, and searched her pockets; searched the U-Haul; and forced Ms. Koutantos into the back of a police car—all while Ms. Kappos and dozens of spectators watched and many spectators recorded videos. Ms. Koutantos told the deputies that her handcuffs were too tight and were causing her pain, but the deputies refused to adjust them. Ms. Koutantos was forced to remain in the unventilated LASD patrol car in handcuffs with no air conditioning for approximately 45 minutes to one hour. Her left hand became numb from the handcuffs.

23. Ms. Kappos continued yelling, "That's my daughter! What are you doing?" from across the street. One deputy approached her, identified himself as Deputy Santalin, and told Ms. Kappos that the U-Haul had been reported stolen. Ms. Kappos

showed Deputy Santalin the U-Haul rental agreement on her phone.  Deputy Santalin stated that the U-Haul van had been reported as stolen and that the deputies were just following LASD policy.

24.    Ms. Kappos and Deputy Santalin went inside U-Haul of East Los Angeles that was across the street from where Mr. Koutantos was detained and spoke with U-Haul employees who confirmed that the van was lawfully rented to Plaintiffs.  The deputies refused to release Ms. Koutantos, however, and continued to detain her handcuffed in a police car for a considerable period of time.

25.    U-Haul representatives eventually informed the LASD deputies that the van had been reported stolen approximately one month earlier and then recovered approximately one week later.

26.    After a considerable period of time, the LASD Deputies finally released Ms. Koutantos.  Ms. Koutantos and Ms. Kappos hugged.  They each began to cry.

27.    The handcuffs left deep indentations and bruising on Ms. Koutantos's wrists.

28.    Several days following the traffic-stop, Ms. Kappos spoke with Lieutenant Taylor, the Watch Commander at the East Los Angeles Sheriff's Station at 5019 E. Third St., East Los Angeles, California 90022.  Lieutenant Taylor told Ms. Kappos that he had given the order for the deputies to conduct the high-risk traffic stop because LASD policy is to perform high-risk traffic stops in response to suspected stolen vehicles.

29.    No one from the LASD has ever apologized to Plaintiffs for the incident.

30.    The California Law Enforcement Telecommunications System ("CLETS") is a statewide computer network used by law enforcement to search vehicle records, among other databases.  On information and belief, the Deputy Defendants conducted the high-risk traffic stop based on information they received from CLETS indicating that the U-Haul van Ms. Koutantos was driving was suspected of being stolen.  Without any further reasonable suspicion beyond this information from CLETS, and without any

probable cause to believe that Ms. Koutantos was involved in any criminal activity, let alone criminal activity posing any high risk of danger, the Deputy Defendants conducted a highly aggressive and terrifying "high-risk" traffic stop.

31.     The Fourth Amendment to the United States Constitution prohibits unreasonable seizures.  U.S. Const. amend. IV; *Washington v. Lambert*, 98 F.3d 1181, 1186 (9th Cir. 1996).  Article I, § 13 of the California Constitution provides a similar prohibition.  Cal. Const. Art. I, § 13; *see People v. Perry*, 36 Cal. App. 5th 444, 466 (2019).

32.     "Under settled Fourth Amendment law, a traffic stop constitutes a seizure, and an officer must have reasonable suspicion before detaining a motorist." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 946 (9th Cir. 2003).  To lawfully arrest a motorist, however, an officer must have probable cause.  *Green v. City & County of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014).

33.     Under Ninth Circuit law, "high-risk" vehicle stops in which multiple officers hold a person at gunpoint, force the person down onto their knees, and handcuff the person constitute a *de facto* arrest requiring probable cause.  *See id.* at 1047.

34.     Ninth Circuit law thus limits the use of such "high risk" detentions only to "special circumstances" "1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur." *Id.*  None of these special circumstances was present here.

35.     Police officers in California use CLETS to determine whether a particular vehicle may be stolen.  Police officers in Los Angeles and throughout California have been expressly warned that information in CLETS identifying a vehicle as potentially stolen is not sufficient to establish probable cause:

> Information obtained from CLETS can be used by peace officers to establish or reinforce the *reasonable suspicion* necessary to *lawfully detain a suspect*. Because the information may be unreliable or unsubstantiated, however, *it is not*

1
2

> *sufficient **alone*** for establishing the probable cause necessary for law enforcement actions such as conducting a search, seizing property, or placing an individual under arrest.

3

California Commission on Peace Officer Standards and Training (POST), Learning

4

Domain 36 (Information Systems), Version 3.6, at 1-9 (emphasis in original).  For this

5

reason, California Department of Justice regulations *require* that officers "obtain

6

confirmation before an arrest or the confiscation of the property in response to the

7

computer match."  *Id.*  Officers are also trained that "[t]he use of unreliable or

8

unsubstantiated information by an officer when establishing probable cause could lead

9

to unlawful searches or seizures as well as incidents of false arrest."  *Id.*

10

     36.    The Deputy Defendants' highly aggressive tactics were pursuant to the

11

LASD's policy and training to use such so-called "high-risk" or "felony" traffic stop

12

tactics based only upon suspicion of a stolen vehicle.

13

     37.    The LASD's high-risk traffic stop policy violates the Fourth Amendment

14

and Article I, § 13 of the California Constitution.  The Deputy Defendants, acting

15

pursuant to LASD policy and training, performed a high-risk stop on Ms. Koutantos

16

based only on unverified and unconfirmed information in CLETS indicating that Ms.

17

Koutantos's vehicle might be stolen.  Without verifying or confirming whether this

18

report was correct, many Deputies surrounded Ms. Koutantos and used the "especially

19

intrusive" tactics of drawing and pointing firearms, forcing Ms. Koutantos onto her

20

knees in the middle of the street, aggressively handcuffing her, and detaining her in the

21

back of a police car for a long period of time even though none of the "special

22

circumstances" required to justify such aggressive tactics were present.

23

     38.    Plaintiffs have been completely traumatized by LASD's use of aggressive

24

and life-threatening high-risk tactics on Ms. Koutantos.

25

     39.    Plaintiffs bring this action for damages against Defendants for general,

26

compensatory, and statutory damages, costs and attorneys' fees based on Defendants'

27

unlawful and egregious conduct, as alleged herein.  Plaintiffs also seek declaratory and

28

injunctive relief enjoining the LASD's policy requiring, or in the alternative

authorizing, "high-risk" stops prohibited by Ninth Circuit law.  Additionally, Plaintiffs seek punitive damages against the individual Defendants.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983

**Fourth and Fourteenth Amendments: Unreasonable Seizure**

**(By Plaintiff Koutantos Against All Defendants)**

40.    Ms. Koutantos alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

41.    All of the acts of Deputy Defendants DOES 1-10 were done under color of state law.

42.    The acts of the Deputy Defendants deprived Ms. Koutantos of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to her rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, unlawfully seizing her by conducting a high risk traffic stop and a *de facto* arrest of her without any lawful basis, probable cause, warrant, or any exception thereto, and unreasonably prolonging her detention even after the Deputies knew or reasonably should have known that she had not stolen the U-Haul or committed any other crime.

43.    Each of the Deputy Defendants was both personally involved and an integral participant in the violation of Plaintiff Koutantos's constitutional rights.  Each Deputy was aware of the unlawful actions of the other Deputies as they planned to and did conduct a "high-risk" stop of Plaintiff Koutantos without reasonable suspicion or probable cause and based only on unverified and unconfirmed information from CLETS indicating that Plaintiff's vehicle might be stolen.  Without any probable cause to believe that Ms. Koutantos was involved in any criminal activity, let alone criminal activity posing any high risk of danger, the Deputy Defendants performed a *de facto*

arrest of Ms. Koutantos, held her at gunpoint, ordered her onto her knees, violently handcuffed her, detained her, and/or stood guard while the other Deputy Defendants committed these acts.  None of the involved Deputies objected to these violations of Plaintiff Koutantos's rights, and each Deputy participated in the violation by performing police functions, including meaningful participation in the unlawful seizure and *de facto* arrest of Plaintiff and the use of unreasonable force against her.

44.    As a direct and proximate result of the aforementioned acts of the Deputy Defendants, Plaintiff Koutantos sustained and incurred damages including pain, suffering, and emotional injury.

45.    In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff Koutantos's constitutional rights.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Deputy Defendant in their individual capacities (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

46.    The Deputy Defendants and any other involved Deputies acted pursuant to expressly adopted official policies or longstanding practices or customs of the County of Los Angeles.  These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out "high-risk" stops, including but not limited to utilizing large numbers of police cars and officers; drawing their weapons and pointing firearms at people; forcing people onto their knees and/or proning them out; handcuffing them; detaining them for unreasonable lengths of time, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to Ninth Circuit law.

47.    The training policies of the County of Los Angeles were not adequate to train, supervise, and control its Deputies to handle the usual and recurring situations with which they must deal, including but not limited to performing (1) high risk traffic stops of vehicles suspected of being stolen based only upon unconfirmed CLETS data

and (2) *de facto* arrests of motorists based only upon same. The County of Los Angeles knew that its failure to adequately train its Deputies for such situations made it highly predictable that its Deputies would engage in conduct that would deprive persons such as Ms. Koutantos of his rights. The County of Los Angeles was thus deliberately indifferent to the obvious consequences of its failure to train its Deputies adequately.

48. Defendant County of Los Angeles's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Ms. Koutantos by Deputy Defendants DOES 1-10, and the other involved Deputies; that is, the County of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Plaintiff Koutantos's rights as to be the moving force that caused her injuries. These policies, longstanding practices, and/or customs include performing high-risk traffic stops of vehicles suspected of being stolen.

49. Then-LASD Sheriff Alex Villanueva, a final policymaker for the County of Los Angeles, ratified the actions and omissions of the Defendant Deputies and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions. Upon information and belief, the County took no action in response to Plaintiff Koutantos's allegations and none of the involved Deputies has been disciplined.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### Fourth and Fourteenth Amendments: Unreasonable Search

### (By Plaintiff Koutantos Against All Defendants)

50. Ms. Koutantos realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

51. All of the acts of Deputy Defendants DOES 1-10 were done under color of state law.

52. The acts of the Deputy Defendants deprived Ms. Koutantos of rights,

privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to her rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment, by, among other things, searching Ms. Koutantos's person and vehicle without a warrant, exigency, emergency, probable cause, or Plaintiff's consent.  In the alternative, if any consent was given, it was coerced and involuntary.

53.    Each of the Deputy Defendants was both personally involved and an integral participant in the violation of Ms. Koutantos's constitutional rights.  Each Deputy was aware of the unlawful actions of the other Deputies as they planned to search and did search Ms. Koutantos's person and vehicle; did not object to these violations of Ms. Koutantos's rights; and participated in the violations by performing police functions, including meaningful participation in the unlawful traffic stop, *de facto* arrest, search, and use of unreasonable force against Plaintiff Koutantos.

54.    As a direct and proximate result of the aforementioned acts of the Deputy Defendants, Plaintiff Koutantos sustained and incurred damages including emotional injury.

55.    In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff Koutantos's constitutional rights.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Deputy Defendant in their individual capacities (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

56.    The Deputy Defendants and any other involved deputies acted pursuant to expressly adopted official policies or longstanding practices or customs of the County of Los Angeles.  These include policies and longstanding practices and/or customs requiring and/or permitting deputies to carry out "high-risk" stops, including but not limited to utilizing large numbers of police cars and officers, drawing their weapons and

pointing firearms at people, forcing people onto their knees, handcuffing them, detaining them at length, and searching their persons and vehicles, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to Ninth Circuit law.

57.     The training policies of the County of Los Angeles were not adequate to train, supervise, and control its Deputies to handle the usual and recurring situations with which they must deal, including but not limited to performing high risk traffic stops of vehicles suspected of being stolen based only upon unconfirmed CLETS data and searching the person and vehicle based only upon same.  The County of Los Angeles knew that its failure to adequately train its Deputies for such situations made it highly predictable that its Deputies would engage in conduct that would deprive persons such as Plaintiff Koutantos of her rights.  The County of Los Angeles was thus deliberately indifferent to the obvious consequences of its failure to train its Deputies adequately.

58.     Defendant County of Los Angeles's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiff Koutantos by the Deputy Defendants and the other involved Deputies; that is, the County of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Plaintiff Koutantos's rights as to be the moving force that caused her injuries.

59.     Then-LASD Sheriff Alex Villanueva, a final policymaker for the County of Los Angeles, ratified the actions and omissions of the Deputy Defendants and the other involved Deputies in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.  Upon information and belief, the County took no action in response to Plaintiff Koutantos's allegations and none of the involved Deputies has been disciplined.

/ / /

/ / /

**THIRD CLAIM FOR RELIEF**

**42 U.S.C. § 1983**

**Fourth and Fourteenth Amendments: Excessive Force**

**(By Plaintiff Koutantos Against All Defendants)**

60.    Ms. Koutantos realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

61.    All of the acts of Deputy Defendants DOES 1-10 were done under color of state law.

62.    The acts of the Deputy Defendants deprived Plaintiff Koutantos of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, using excessive force against Plaintiff Koutantos.  Specifically, Defendants pointed their guns at Plaintiff Koutantos, which under established Ninth Circuit law is a use of force.  Defendants also forced Plaintiff down on her knees in the middle of the street, and applied handcuffs so tightly that Plaintiff's hand went numb and the handcuffs left deep indentations and bruising on her wrists.  Ms. Koutantos told the deputies that the handcuffs were too tight and were causing her pain, but the deputies refused to adjust the handcuffs.

63.    Each of the Deputy Defendants was both personally involved and an integral participant in the violation of Plaintiff Koutantos's constitutional rights.  Each Deputy was aware of the unlawful actions of the other Deputies as they planned to and did point their firearms at Plaintiff, forced Plaintiff to kneel in the middle of the street, and forcefully handcuffed Plaintiff.  None of the Deputies objected to these violations of Plaintiff's rights, and each Deputy participated in the violation by performing police functions, including meaningful participation in the unlawful traffic stop, *de facto* arrest, and use of unreasonable force against Plaintiff.

64.    As a direct and proximate result of the aforementioned acts of the Deputy

Defendants, Plaintiff Koutantos sustained and incurred damages including pain, suffering, and emotional injury.

65.    In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff Koutantos's constitutional rights.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Deputy Defendant in their individual capacities (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

66.    The Deputy Defendants and any other involved deputies acted pursuant to expressly adopted official policies or longstanding practices or customs of the County of Los Angeles.  These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out "high risk" stops involving excessive force, including but not limited to utilizing large numbers of police cars and officers, drawing their weapons and pointing firearms at people, forcing people onto their knees, tightly handcuffing them, and detaining them at length, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to Ninth Circuit law.

67.    The training policies of the County of Los Angeles were not adequate to train, supervise, and control its Deputies to handle the usual and recurring situations with which they must deal, including but not limited to performing high risk traffic stops of vehicles suspected of being stolen based only upon unconfirmed CLETS data and using excessive force based only upon same.  The County of Los Angeles knew that its failure to adequately train its Deputies for such situations made it highly predictable that its Deputies would engage in conduct that would deprive persons such as Plaintiff of his rights.  The County of Los Angeles was thus deliberately indifferent to the obvious consequences of its failure to train its Deputies adequately.

68.    Defendant County of Los Angeles's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the

deprivation of the constitutional rights of Plaintiff Koutantos by Deputy Defendants DOES 1-10, and the other involved Deputies; that is, the County of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused his injuries.

69.    Then-LASD Sheriff Alex Villanueva, a final policymaker for the County of Los Angeles, ratified the actions and omissions of the Deputy Defendants and the other involved deputies in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.  Upon information and belief, the County took no action in response to Plaintiff Koutantos's allegations and none of the involved Deputies has been disciplined.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### Fourth and Fourteenth Amendments: Failure to Intervene

### (By Plaintiff Koutantos Against All Defendants)

70.    Ms. Koutantos realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

71.    All of the acts of Deputy Defendants DOES 1-10 were done under color of state law.

72.    The acts of the Deputy Defendants deprived Plaintiff Koutantos of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to her rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, failing to intervene in the unlawful actions of other Deputies.  These unlawful actions include the unreasonable traffic stop of Plaintiff Koutantos, the unlawful *de facto* arrest of Plaintiff, the unlawful search of Ms. Koutantos' person and vehicle, and the use of excessive force against Plaintiff, including Defendants drawing their guns and pointing them at Plaintiff, forcing Plaintiff onto her knees, applying handcuffs so tightly that Plaintiff's hand went

numb and she suffered bruising, and detaining Plaintiff for an extended period of time.

73.     At all relevant times, the Deputy Defendants were present and had a realistic opportunity to intervene and prevent the unlawful traffic stop, *de facto* arrest, unlawful search, and excessive force by their fellow Deputies against Plaintiff, but neglected to do so.

74.     As a direct and proximate result of the aforementioned acts and omissions of the Deputy Defendants, Plaintiff sustained and incurred damages including pain, suffering, and emotional injury.

75.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff's constitutional rights.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Deputy Defendant in their individual capacities (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

76.     The Deputy Defendants and any other involved deputies acted pursuant to expressly adopted official policies or longstanding practices or customs of the County of Los Angeles.  These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out "high risk" stops, including but not limited to utilizing large numbers of police cars and officers, drawing their weapons and pointing firearms at people, forcing people onto their knees, handcuffing them, detaining them at length, searching their persons and vehicles, and failing to intervene in same, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to Ninth Circuit law.  These official policies and longstanding practices and/or customs also include failure to intervene in said activities.

77.     The training policies of the County of Los Angeles were not adequate to train, supervise, and control its Deputies to handle the usual and recurring situations with which they must deal, including but not limited to failing to intervene to stop

unlawful seizures, unlawful searches, and the use of excessive force, including carrying out "high-risk" stops utilizing large numbers of police cars and officers, drawing and pointing firearms at people, forcing people onto their knees, detaining them at length, and searching their persons and vehicles, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to the Ninth Circuit law.  The County of Los Angeles knew that its failure to adequately train its Deputies for such situations made it highly predictable that its Deputies would fail to intervene to stop constitutional violations by their fellow Deputies that deprive persons such as Plaintiff of their rights.  The County of Los Angeles was thus deliberately indifferent to the obvious consequences of its failure to train its Deputies adequately.

78.     Defendant County of Los Angeles's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiff by Deputy Defendants DOES 1-10, and the other involved Deputies; that is, the County of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused her injuries.

79.     Then-LASD Sheriff Alex Villanueva, a final policymaker for the County of Los Angeles, ratified the actions and omissions of the Deputy Defendants and the other involved deputies in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions, including their failure to intervene to stop the unlawful acts of their fellow deputies.  Upon information and belief, the County took no action in response to Plaintiff's allegations and none of the involved Deputies have been disciplined.

**FIFTH CLAIM FOR RELIEF**

**BANE ACT, CIVIL CODE § 52.1**

**(By Plaintiff Koutantos Against All Defendants)**

80.     Plaintiff Koutantos realleges and incorporates by reference each and every

allegation contained above as though fully set forth herein.

81.     Article I, § 13 of the California Constitution and the Fourth Amendment to the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment, guarantee the right of persons to be free from unlawful false arrests, unlawful searches, and excessive force on the part of law enforcement officers.  The Deputy Defendants and the other involved deputies, by engaging in the wrongful acts and failures to act alleged herein, intentionally and deliberately denied each of these rights to Plaintiff by threats, intimidation, or coercion, to prevent Plaintiff from exercising her rights to be free of false arrest, unlawful searches, and excessive force, thus giving Plaintiff claims for damages pursuant to California Civil Code § 52.1.  Specifically, the Deputy Defendants and other involved Deputies unlawfully (1) stopped Plaintiff based only upon unverified information from CLETS indicating that Plaintiff's vehicle might be stolen, (2) performed a *de facto* arrest of Plaintiff without probable cause, (3) searched Plaintiff's person and vehicle without probable cause or Plaintiff's consent, and (4) used excessive force against Plaintiff, including by pointing their guns at Plaintiff, forcing Plaintiff onto her knees, and handcuffing Plaintiff despite her complaints that her hand became numb and she suffered deep indentations and bruising on her wrists.  The Deputy Defendants intended by their actions to deprive Plaintiff of her enjoyment of the interests protected by the right to be free of such conduct.

82.     As a direct and proximate result of the aforementioned acts and omissions of the Deputy Defendants, Plaintiff sustained and incurred damages including pain, suffering, and emotional injury.

83.     Each of the Deputy Defendants was both personally involved and aided and abetted in the violation of Plaintiff's constitutional rights.  Each Deputy knew that the other Deputies were committing unlawful actions against Plaintiff as they planned to and did unlawfully arrest Plaintiff, search Plaintiff's person and vehicle, use excessive force against Plaintiff, and detain Plaintiff.  Each Deputy gave substantial

assistance or encouragement to the other Deputies and each Deputy's conduct was a substantial fact in causing harm to Plaintiff.

84.    Then-LASD Sheriff Alex Villanueva, a final policymaker for the County of Los Angeles, approved and/or ratified the unconstitutional policy guiding the Deputy Defendants' unlawful acts, and approved and/or ratified the actions and omissions of the Deputy Defendants and the other involved deputies in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.  Upon information and belief, the County took no action in response to Plaintiff's allegations and none of the involved Deputies has been disciplined.  The County of Los Angeles is vicariously liable for its Officers' misconduct.

85.    In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Plaintiff's rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Deputy Defendant in their individual capacities (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

86.    As the direct and legal result of Defendants' conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to those set forth above, and is entitled to statutory damages under Cal. Civ. Code § 52, including damages up to three times Plaintiff's actual damages but no less than $4,000 for every offense of California Civil Code § 51 *et seq.*, as well as compensatory and punitive damages and attorneys' fees.

## SIXTH CLAIM FOR RELIEF

## ASSAULT

### (By Plaintiff Koutantos Against All Defendants)

87.    Plaintiff Koutantos realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

88.    Deputy Defendants drew their weapons and aimed them at Plaintiff's

1   person in a threatening manner.

2        89.    Plaintiff reasonably believed that Deputy Defendants would shoot her.

3        90.    Plaintiff did not consent to Deputy Defendants' conduct.

4        91.    As a direct and proximate result of the aforementioned acts or omissions of

5   Deputy Defendants, Plaintiff has suffered and continues to suffer emotional injury.

6        92.    Upon information and belief, each of the Deputy Defendants was either

7   personally involved and/or aided and abetted in the tortious violation of Plaintiff's

8   rights. Each Deputy knew that the other Deputies were committing unlawful actions

9   against Plaintiff as they planned to and did unlawfully aim their weapons at Plaintiff.

10  Each Deputy gave substantial assistance or encouragement to the other Deputies and

11  each Deputy's conduct was a substantial fact in causing harm to Plaintiff.

12       93.    The County of Los Angeles is vicariously liable for the actions of the

13  Deputy Defendants.

14       94.    In doing the foregoing wrongful acts, Defendants, and each of them, acted

15  with conscious disregard of Plaintiff's rights. Said Defendants' conduct was willful,

16  wanton, malicious, and oppressive, thereby justifying an award of exemplary and

17  punitive damages against each individual Deputy Defendant in their individual

18  capacities (but not against the entity Defendant) to punish the wrongful conduct alleged

19  herein and to deter such conduct in the future.

20  **SEVENTH CLAIM FOR RELIEF**

21  **BATTERY BY PEACE OFFICER**

22  **(By Plaintiff Koutantos Against All Defendants)**

23       95.    Plaintiff Koutantos realleges and incorporates by reference each and every

24  allegation contained above as though fully set forth herein.

25       96.    Deputy Defendants intentionally touched Plaintiff including forcefully

26  handcuffing her, forcing her onto her knees, and handcuffing Plaintiff so tightly that her

27  hand went numb and she suffered deep indentations and bruising on her wrists.

28  Plaintiff complained that the handcuffs were too tight and were causing her pain, but the

deputies refused to adjust them, resulting in Plaintiff suffering further injury.

97.   Deputy Defendants used unreasonable force while intentionally touching Plaintiff.

98.   Plaintiff did not consent to the Deputies' uses of force.

99.   Plaintiff was harmed by the Deputies' uses of force, which has caused her to suffer injuries including pain, suffering, and emotional injuries.

100.   Each of the Deputy Defendants was either personally involved and/or aided and abetted in the tortious violation of Plaintiff's rights.  Each Deputy knew that the other Deputies were committing unlawful actions against Plaintiff as they planned to and did use excessive force against Plaintiff.  Each Deputy gave substantial assistance or encouragement to the other Deputies and each Deputy's conduct was a substantial fact in causing harm to Plaintiff.

101.   As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiff sustained pain, suffering, and emotional injury.

102.   The County of Los Angeles is vicariously liable for the actions of the Deputy Defendants.

103.   In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Plaintiff's rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Deputy Defendant in their individual capacities (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## EIGHTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (By Plaintiff Koutantos Against All Defendants)

104.   Plaintiff Koutantos realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

105.   Deputy Defendants' actions performing a "high-risk" stop of Plaintiff,

drawing their guns, pointing their weapons at Plaintiff, forcing Plaintiff onto her knees, violently handcuffing Plaintiff, detaining Plaintiff, and searching her person and vehicle, was outrageous.  This conduct was performed with reckless disregard to the effect that these actions and omissions would have upon Plaintiff, including emotional distress.

106.   As a direct and proximate result of the aforementioned acts or omissions of Deputy Defendants, Plaintiff suffered injuries including pain, suffering, and severe emotional injury.

107.   The County of Los Angeles is vicariously liable for the actions of the Deputy Defendants.

108.   In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Plaintiff's rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Deputy Defendant in their individual capacities (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### NINTH CLAIM FOR RELIEF

### NEGLIGENCE

### (By All Plaintiffs Against All Defendants)

109.   Plaintiffs Koutantos and Kappos reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

110.   The conduct of the Deputy Defendants as set forth herein, was tortious in that Defendants breached their duty of care to Plaintiff Koutantos, an unarmed woman besieged by many Sheriff's Deputies when the Deputy Defendants performed a "high-risk" stop, searched Plaintiff's person and vehicle, used excessive force against Plaintiff including by forcing her onto her knees, pointing guns at her, and violently handcuffing her, and detained her in a police car for a lengthy and unreasonably prolonged period of time.  As a direct and proximate cause of Defendants' conduct as alleged herein,

Plaintiff Koutantos sustained and incurred physical and emotional damages.

111.   Plaintiff Kappos, who is Plaintiff Koutantos's mother, was present during the incident, and saw the Defendant Deputies use high-risk tactics against her daughter including pointing guns at her, forcing her onto the ground, and handcuffing her, and detaining her for a prolonged period of time.  Plaintiff Kappos was aware during the incident that the Deputies' negligent actions were causing her daughter to suffer injury.  As a direct and proximate cause of Defendants' conduct as alleged herein, Plaintiff Kappos sustained and incurred serious emotional distress including panic attacks following the incident requiring her to seek care at a hospital emergency department, in addition to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame of such severity that an ordinary, reasonable person would have been unable to cope with it.  Defendants' conduct was a substantial factor causing Plaintiff Kappos's serious emotional distress.

112.   The County failed to appropriately hire, supervise, train, review, and ensure that their Deputies abided by the standard of care, failed to enact appropriate standards and procedures that would have prevented such harms to Plaintiffs Koutantos and Kappos, including failing to train LASD Deputies (1) not to use high-risk traffic stops based only on suspicion of a stolen vehicle arising from unverified CLETS data, and (2) not to use excessive force or perform *de facto arrests* or vehicular searches in situations where such actions are not justified.

113.   Each of the Deputy Defendants was either personally involved and/or aided and abetted in the breach of a duty to care toward Plaintiffs.  Each Deputy knew that the other Deputies were committing unlawful actions against Plaintiffs as they planned to and did unlawfully arrest Plaintiff Koutantos, search her person and vehicle, use excessive force against Plaintiff Koutantos, and detain Plaintiff Koutantos in a police car with knowledge that Plaintiff Koutantos's mother, Plaintiff Kappos, was witnessing the incident and suffering serious emotional distress.  Each Deputy gave substantial assistance or encouragement to the other Deputy and each Deputy's conduct

1  was a substantial fact in causing harm to Plaintiffs.

2      114.  As a direct and proximate result of Defendants' conduct as alleged herein,

3  Plaintiff Koutantos sustained and incurred physical and emotional damages and

4  Plaintiff Kappos sustained and incurred serious emotional distress.

5      115.  The County of Los Angeles is vicariously liable for the actions of the

6  Deputy Defendants.

7      116.  In doing the foregoing wrongful acts, the Deputy Defendants, and each of

8  them, acted with conscious disregard of Plaintiffs' rights.  Said Defendants' conduct

9  was willful, wanton, malicious, and oppressive, thereby justifying an award of

10  exemplary and punitive damages against each individual Deputy Defendant in their

11  individual capacities (but not against the entity Defendant) to punish the wrongful

12  conduct alleged herein and to deter such conduct in the future.

### PRAYER FOR RELIEF

14  WHEREFORE, Plaintiffs pray for the following relief:

15      1.  For compensatory, general and special damages against each Defendant,

16  jointly and severally, amounts to be proven at trial;

17      2.  For punitive and exemplary damages against individually named Deputy

18  Defendants DOES 1-10 in their individual capacities and in an amount appropriate to

19  punish Defendants and deter others from engaging in similar misconduct;

20      3.  Prejudgment and post-judgment interest;

21      4.  For costs and suits and reasonable attorneys' fees and costs as authorized

22  by statute or law;

23      5.  For restitution as the Court deems just and proper;

24      6.  For injunctive and declaratory relief; and

25      7.  For such other relief as the Court may deem proper.

26  / / /

27  / / /

28  / / /

COMPLAINT FOR DAMAGES       -25-

1

## DEMAND FOR JURY TRIAL

2
Plaintiff hereby demands trial by jury in this action.

3

4
Dated: October 12, 2023                    Respectfully Submitted,

5
                                           HADSELL STORMER RENICK & DAI LLP

6

7
                                           By: ____/s/ Brian Olney_____
                                               Dan Stormer
8                                              Brian Olney
                                               Attorneys for Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28